CASE No. 957.

GIBBES v. G. & C. RAILROAD COMPANY.

STATE, *EX RELATIONE* ATTORNEY-GENERAL, v. SAME.

*EX PARTE* CLYDE ET AL.

*EX PARTE* COURTENAY.

1. In the administration of its own rules, this court, as far as practicable, will not permit mere forms to override substance.
2. The first section of the act of 1878, (16 *Stat.* 698), regulating appeals to the Supreme Court, applies to all cases where the order, decree or judgment appealed from was made during the term at which the case was tried.
3. To be entitled to an appeal from a decree rendered during the term at which the case was tried, the appellant, within ten days after the rising of the court, must furnish the presiding judge, and serve the respondent's attorney with notice of his intention to appeal, and within thirty days thereafter must serve his case upon the respondent. *Rogers* v. *Nash*, 12 *S. C.* 560, affirmed.
4. After the time had expired for furnishing the presiding judge with notice of intention to appeal, the respondent, in ignorance of appellant's failure so to furnish his notice, signed an agreement as to the papers which should constitute the appeal record, and the time within which it should be prepared. *Held*, that there was no waiver of the failure to furnish the presiding judge with such notice.
5. A *cestui que trust* has the right to appear in this court and avail himself of the appeal of his trustee. This case distinguished from *Shaw* v. *Railroad Company*, 10 *Otto* 611, and *Annely* v. *De Saussure*, 12 *S. C.* 512.
6. But such *cestui que trust* must secure to the trustee all expenses necessary to the prosecution of the appeal.

2 B

Motions to dismiss appeals. The cases are fully stated in the opinion.

*Messrs. C. H. Simonton* and *James Conner*, for Clyde et al.

*Messrs. Samuel Lord, Jr.*, and *J. P. K. Bryan*, for Courtenay.

*Messrs. Pope & Haskell*, for Clark, trustee.

*Messrs. D. T. Corbin, A. G. Magrath* and *Julian Mitchell*, for Fisher, receiver.

January 10th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. Proceedings were originally instituted in the above-entitled cases in the Court of Common Pleas for Richland county, on behalf of creditors, to sell the property of the Greenville and Columbia Railroad Company. To this end an order was made by Judge T. J. Mackey on November 29th, 1879. Under this order Mr. Barnwell, the master, exposed the road to sale, at public auction, in the city of Columbia, on April 15th, 1880. At this sale several bidders appeared, among them W. P. Clyde, T. M. Logan, Joseph Bryan and W. A. Courtenay, as a committee of second mortgage bondholders. At a certain stage of the bidding, when Mr. Courtenay, as the agent of this committee, had bid the sum of $2,303,600, the hammer of the auctioneer fell. The cash payment of $20,000, required by the order of sale, was handed over to the master, and the names of the committee entered upon the auctioneer's book. After this was done, but before the master and his auctioneer had left the block, it was brought to the attention of the master that another party had bid a higher sum than that at which the property had just been knocked down to the committee, and this before the hammer fell. Upon investigation of the facts, and upon the advice of his counsel, the master concluded to re-open the biddings, which was immediately done, but against the protests of the committee. The cash payment, however, was returned to Courtenay and the biddings re-opened. Finally, at a bid of

$2,963,400 by Courtenay, the property was again knocked down, the cash payment of $20,000 again turned over to the master and the sale ended. On July 10th, 1880, thereafter, W. P. Clyde, T. M. Logan and Joseph Bryan filed their petition *in re* to the July Term of the court, claiming that the sale was complete to the committee at the bid of $2,393,600, and that the master erred in opening the biddings after the property had been knocked down to them at that price; that the receipt of the master of the cash payment of $20,000, and the entry in the book of the auctioneer of the names of the committee as purchasers, fixed and bound the bargain, and that it was thereafter irrevocable, and they prayed relief on that basis. After some further proceedings, and with the proper parties before the court, the whole matter, by order of the presiding judge, was referred to the master, with instructions to take testimony upon the issues raised and report the same to the court. Upon the coming in of the report, Judge Hudson, on August 21st, 1880, and in open court, delivered his decree, which was filed during the session of the court.

It is unnecessary here to state the terms of this decree. It is sufficient for the questions now involved to say that it was unsatisfactory at least to W. A. Clark, trustee, and John H. Fisher, a holder of second mortgage bonds, and that each of these parties gave immediate notice of his intention to appeal; the notice of Fisher being dated August 25th, and that of Clark August 30th, 1880.

It will contribute to the better understanding of the facts of the case to state at this point that the prominent parties before the court, interested in the issues raised, were W. P. Clyde, T. M. Logan and Joseph Bryan, acting for the committee, W. A. Courtenay individually, W. A. Clark, as trustee for second mortgage bondholders, and John H. Fisher as receiver of the South Carolina Railroad Company, holding a large amount of second mortgage bonds. These parties, as it distinctly appears in the record, from their first appearance in the proceedings below, up to the time the case reached this court, have been respectively represented by their own and different attorneys— W. P. Clyde & Co. by Messrs. Simonton & Barker; W. A.

Courtenay by Messrs. Bryan & Bryan at first, and afterwards assisted by Messrs. Lord & Inglesby; W. A. Clark, as trustee, by Messrs. Pope & Haskell; and John H. Fisher by Mr. Corbin.

It also appears that the appealing parties, immediately after the decree was filed, began, each for himself, to prepare and serve the papers necessary to perfect their respective appeals.

To this end Messrs. Pope & Haskell, as attorneys for W. A. Clark, trustee, gave notice of Clark's intention to appeal on August 30th, as above stated. This notice seems to have been properly served within the ten days required by the act. They also prepared and served exceptions, as required, upon the presiding judge and the other parties within ten days after the rising of the court, but they failed to serve any case, either with or without exceptions, on the attorneys of record of Courtenay.

Mr. Fisher failed to have the presiding judge served with his exceptions either within the ten days after the rising of the court or any time thereafter. He failed, too, altogether in having the attorneys of Courtenay served with a case or exceptions, or a case with exceptions, within thirty days after notice of appeal, or at any other time.

Upon the above state of facts, W. P. Clyde & Co. and Mr. Courtenay, after due notice, on December 14th, 1880, moved this court to dismiss the appeal of W. A. Clark, trustee. The court, upon hearing these motions and after full argument, on December 20th, 1880, filed an order dismissing the appeal of John H. Fisher, generally, and the appeal also of W. A. Clark as to W. A. Courtenay individually, but retaining the appeal of Clark as to W. P. Clyde & Co., with the right of Clark's *cestuis que trust*, should any desire to do so, to come in and avail themselves of the benefits of Clark's appeal against Clyde & Co.; the parties thus coming in to contribute their *pro rata* share of the expenses incurred, now or hereafter, in prosecuting this appeal.

The duty of preparing the opinion of the court upon this order has been assigned to me, which duty I will now proceed to discharge as clearly and succinctly as I can.

The law in reference to appeals in cases like this now before the court, and especially as to the steps necessary to be taken to perfect an appeal, in their order, will be found in the act entitled

" An act to alter and amend the law in relation to appeals from the Circuit Court to the Supreme Court," passed in 1878. 16 *Stat.* 698. This being an act of the general assembly of the state, is equally binding upon this court, upon the bar and upon all parties litigant, and although it may seem, to some extent, harsh and technical, and may, in its enforcement, sometimes sacrifice merit to mere forms, yet *ita lex scripta est*, and that, too, by a power higher than courts or parties, and it can be neither modified or evaded. It affords this court no pleasure to consummate, by its order or judgment, mere technical victories in contests before the court, especially where it is apparent that justice or right may be sacrificed thereby; and I may say that in the adoption and administration of its own rules, while a proper regard will always be had to forms of procedure, in so far at least as to prevent uncertainty and confusion in the conduct of causes before the court, yet, as far as practicable, this court will also always see to it that mere forms shall not override substance. But, while this is the spirit of the court in the adoption of its own rules, yet this court has no power to look through and beyond an act of the general assembly to its consequences, with the view to modify its operation, especially where the requirements of the act are plain and its terms are imperative and peremptory. On the contrary, it is the duty of the court to enforce the law as it stands, regardless of results, relying upon the wisdom of the legislature, in the belief that the general benefits resulting from a full observance of the law, will more than compensate for all evils falling to individual or exceptional cases.

The act of 1878, referred to above, in its first section provides that for the purpose of appeal to the Supreme Court from the rulings of the presiding judge in the court below, exceptions may be taken within ten days after the rising of the court at which the case was tried, by service thereof upon the presiding judge and the attorney of the respondent within the ten days.

In the opinion of the court this section applies to all cases, both at law and in chancery, where the order, decree or judgment appealed from is made during the term of the court at which the case is tried.

Before the passage of this act exceptions were required to be

made in open court during the trial of the case, which were either entered at once upon the minutes of the judge or reduced to writing, so that they might be fixed and remain certain. This seems to have been regarded as an evil or an inconvenience in the practice, and the act of 1878 was enacted to remedy this evil, and for that purpose the time for exceptions was extended by this act to ten days after the rising of the court. This extension of time is a privilege allowed by the act to litigants, and is limited to ten days, and it applies, in express words, without exception, to *all cases tried* by the court.

The second section further provides that within ten days after the rising of the court, as to all orders, decrees and judgments rendered during the term, or if rendered at chambers, then within ten days after written notice thereof, the appellant shall serve the respondent or his attorneys with notice of his intention to appeal, and within thirty days after this notice he shall, in either case, prepare and serve a case or exceptions, or a case with exceptions, unless, as to this last requirement, the judge before whom the case was heard shall extend the time.

The fourth section provides that a failure on the part of the appellant to comply with either of the foregoing sections shall amount to a waiver of his appeal. The language employed in these sections presents their meaning and intent so plainly that it needs no critical analysis to reach that intent. All that is necessary for this purpose is simply to read the sections. Upon this reading it will be seen at once that in every case where tried in open court and disposed of during the term, whether it be at law or a case in chancery, in order to perfect an appeal to this court this act requires three distinct steps to be taken by the appellants within a time limited as to each; a failure as to either of which is fatal—fatal not by the rules of this court, but by the express terms of the fourth section of the act itself.

These steps are as follows: *First.* Exceptions must be served on the presiding judge and the attorney of the respondent within ten days after the rising of the court. *Second.* Notice of intention to appeal must be served, also, within ten days after the rising of the court, upon the respondent or his attorney. *Third.* A case or exceptions, or a case with exceptions, must be served within thirty days after the notice of appeal.

This is the meaning of the act as interpreted from its terms, and it has been so construed by this court in accordance with this intent. In the case of *Rogers* v. *Nash,* 12 *S. C.* 560, which was an equity case, the decree being rendered in open court, the court dismissed the appeal, because the appellant had failed to comply with this act, both as to service of exceptions on the presiding judge and as to the service of his case within the time prescribed, the court holding that a failure in either respect was fatal.

The authority of this case was recognized in the recent case of *Scurry* v. *Coleman, ante p.* 166; and upon mature consideration, it is now re-affirmed as the law regulating appeals in cases of this kind.

What steps may be necessary in an appeal from an order, decree or judgment rendered at chambers, is not involved in this case, and the court does not feel called upon here to express any opinion on that subject.

Now apply these principles to the facts of this case and the motions made thereon. It is admitted that Fisher failed to have his exceptions served on the presiding judge within ten days after the rising of the court. This, without more, would be fatal under the act. *Rogers* v. *Nash, supra.* Can Fisher be relieved from it?

His counsel contends that this defect has been waived by agreement of parties, and he has submitted the following as the agreement:

" It is agreed that the following shall constitute the record for the purposes of the appeal in the above-entitled causes: All the decrees, orders, petitions, answers and exceptions contained in the printed pamphlet thereof, used in said causes at the hearing on August 18th, 19th and 20th, 1880, and the testimony in said cause reported by Barnwell, master, and the opinion and decree of Judge Hudson. It is agreed that said record may be made up at any time before the meeting of the next term of the Supreme Court.

(Signed)      "SIMONTON & BARKER.

"D. T. CORBIN.

"POPE & HASKELL.

"September 1st, 1880."

The court recognizes the right of parties to make written agreements and to waive irregularities; and where there is no misunderstanding as to the stipulations, the court would be disposed to enforce such agreements according to the intent of the parties.

In this case, however, there is a misunderstanding. The claim of Mr. Corbin that the agreement here waived preceding conditions is denied by the attorneys of Clyde & Co. Under such circumstances, the court must look to the paper itself. The paper bears date on September 1st, 1880, several days after the time had expired for the service of the exceptions on the presiding judge. There is not a word in it which refers to the exceptions. The appeal at that time was lost and beyond the reach of remedy, but there is nothing in the paper which shows that this was known to the attorneys of Clyde, who signed it. In the absence of such knowledge, the court cannot conclude that it was understood on both sides to cover past defects, especially when we look at the agreement itself, and find that it is confined entirely to stipulations as to what shall constitute the record, and as to the time within which this record should be prepared in the future. This, then, is sufficient to dismiss the appeal of Fisher as to Clyde & Co., and as to Courtenay individually.

Fisher and Clark each failed to have their case served on the attorneys of Courtenay, or on Courtenay himself. This failure is also attributed to the agreement already discussed. It seems to have been understood by these parties that Messrs. Simonton & Barker represented Courtenay as well as Clyde & Co., and that the agreement signed by Messrs. Simonton & Barker covered Courtenay's case as well as that of Clyde & Co.

The court is satisfied that there has been an honest misunderstanding on this subject, growing out of the fact that the attorneys of Clyde & Co. and of Courtenay were sometimes found together in the various contests below, fighting on the same line and contending for the same ends. But when we look to the history of the case, as found in the record and in the different steps taken by each party, we find a clear and distinct line of cleavage, so to speak, marked step by step on the record, from the first moment the parties appeared in the court below until

they reached this court, between Courtenay as an individual and Clyde & Co. as the committee, each being represented on the record by his own and different attorneys. Such being the fact, even if Mr. Simonton intended to bind Courtenay, of which we have no evidence, yet his act being without the knowledge of Courtenay, and not only not ratified subsequently but repudiated by him, could not bind him. The misunderstanding was a natural one, and without fault on either side, and we cannot suppose for a moment that there was any intention to deceive or entrap.

Now, whatever may have been the cause of the failure to perfect their appeal, the parties failing must take the consequences. This disposes of so much of the order as refers to the appeals dismissed.

The appeal of Clark is retained as to W. P. Clyde & Co., with the right of his *cestuis que trust*, should they desire to do so, to come in and avail themselves of his appeal. Mr. Clark has no personal interest in this matter whatever; he is a mere naked trustee of an express trust, and he is in court solely as the representative, and for the benefit, of his *cestuis que trust*. In his notice of appeal he recognizes this fact, and expressly states that he appeals in behalf of the holders of the bonds secured by said mortgage. How, then, as long as Clark's appeal stands, can any second mortgage bondholder who may desire to come in be shut out? Nothing, it appears to the court, would be more inequitable and unjust, and it would require an authority so well settled and controlling that the court could not but yield to it, before the court could be led to a conclusion so subversive of the equities of the parties. So far as the court can see, there remains but one of the second mortgage bondholders unsheltered. He may have no merit in his claim, but with this the court has nothing to do. He is a bondholder to a large amount; his representative and trustee is properly in court with his appeal perfected. Who did the trustee appeal for, if not for him; and can the trustee be permitted now to shut the door upon him and exclude him from the right of appealing and assisting to defend and protect his own interests?

It is a familiar doctrine of equity that a trustee can do no act to the prejudice of his *cestui que trust*, and he will be restrained

by injunction from using his powers to the sacrifice of his trust. Even in an action at law in the name of the trustee, he cannot release or discontinue the action without the consent of his beneficiary.  *Perry on Trusts* 467, § 520.

The cases of *Shaw* v. *Railroad Co.,* 100 *U. S.* (10 *Otto*) 611, and *Annely* v. *De Saussure,* 12 *S. C.* 512, relied on in the argument, do not reach the point involved here.   In the case of Shaw and the railroad company the *cestuis que trust* were not parties to the original suit—they were represented therein by their trustee. The case ended without appeal, and the *cestuis que trust* attempted to have the decree reviewed and reversed by a new proceeding in their own names, and this, too, without any charge of bad faith or otherwise against their trustee.

Their bill or demurrer was dismissed, and the Supreme Court sustained the judgment below, on the ground that the trustee in the suit below represented the bondholders, and whatever bound him bound them.   On the same principle, had the trustee appealed, the *cestuis que trust* would certainly have been entitled to the benefit of the appeal.

In the case of *Annely* v. *De Saussure, supra,* the defendant, as executor of a deceased mortgagor, sold at private sale the mortgaged property, as alleged by him, with the knowledge and consent of the parties interested under the mortgage.   The plaintiff, who was one of the devisees and executrix of the mortgagee, filed her complaint to vacate this sale of the executor and to foreclose the mortgage.   Two other devisees, interested under the mortgage, were made defendants in this proceeding because they had consented to the private sale by the executor.   The complaint was dismissed below, but, upon appeal by the executrix, this judgment was reversed and a re-sale ordered.   The two defendants, however, who, as it appeared from the report of the referee, had consented to private sale and had received a portion of the proceeds thereof, were excluded from the benefits of the re-sale, the court holding that the successful appeal of the executrix could not enure to their relief.   This was upon the ground that they, by consenting to, and ratifying the private sale of, the executor, had separated themselves, to some extent, from the other parties interested in the mortgage, and they should be held

bound by their own independent acts. Their rights had been adjudicated below upon facts which distinguished them from the others. They did not appeal, nor does it appear that they claimed the benefit of the appeal of the executrix, who represented herself as devisee as well as executrix, and they were properly held bound by their own acts.

In the case now before the court, Clark has no individual interest. He does not occupy the position both of trustee and *cestui que trust* as Miss Annely did, nor has his *cestui que trust*, who now seeks to avail himself of his appeal, separated himself from the trust deed by any positive act of his own, which was adjudicated against him on the trial below, rendering it necessary for him to have appealed in his own behalf and independent of the trustee, as was the case with the two *cestuis que trust* in Annely *v.* De Saussure.

The principle decided, therefore, in Annely *v.* De Saussure, while right on the facts of that case, has no application here.

The holders of bonds secured by the mortgage to Clark, must be allowed the benefit of his appeal, but in coming in they must secure to Clark all expenses necessary to its prosecution which Clark has already incurred or may hereafter incur. Clark's appeal has been retained as to the committee, and as to the questions raised in his exceptions involving the rights of the committee, and none other. A *cestui que trust* coming in can rise no higher than Clark. On the contrary, he must stand on the same plane with Clark, and must be confined to the same questions and against the same parties as has already been directed by the order of this court, which order is hereto appended as the conclusion of this opinion.

McIVER and McGOWAN, A. J.'s, concurred.

The order dismissing the appeal of Fisher, receiver, and sustaining that of Clark, trustee, was filed December 20th, 1880, No. 954, and is as follows:

These were motions to dismiss two appeals from the same judgment, and they were taken up together.

After hearing argument, it is ordered—

1. That the motions of ·Clyde, Logan and Bryan, and W. A. Courtenay, to dismiss the appeal of John H. Fisher, receiver, be granted, and that the said appeal be dismissed.

2. It is ordered that the motion of W. A. Courtenay to dismiss the appeal of W. A. Clark, trustee, be granted, and that said appeal be dismissed, so far as it affects the said William A. Courtenay individually, but not as one of the Clyde committee.

3. It is further ordered that the appeal of William A. Clark, trustee, stand as to all other parties, unaffected by anything contained in this order; with the right on the part of any of the holders of bonds under the second mortgage to Clark, as trustee, who may come in and contribute their *pro rata* share of the expenses, to avail themselves of the benefit of said appeal. The said right to be limited to the questions made by said appeal as to the parties against whom said appeal is permitted to stand.

The opinion of the court to ·be filed hereafter.